IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| In the Matter of the Parental Rights to | ) | No. 36431-3-III |
| | ) | |
| H.A.M. | ) | UNPUBLISHED OPINION |
| | ) | |

PENNELL, A.C.J. — M.A.C. appeals an order terminating his parental rights to his son, H.A.M. We affirm.

## FACTS

In the spring of 2016, appellant M.A.C. drove his truck from Chicago, Illinois to Washington State, carrying a stash of methamphetamine. M.A.C.'s three-year-old son H.A.M. was in the back seat of the truck. Another passenger was H.A.M.'s mother, A.M.G. While traveling through Adams County, M.A.C. attacked and killed A.M.G. with a knife. H.A.M. saw at least some of the assault. He remembers seeing blood on his mother and his father hurting his mother in the head. After killing A.M.G., M.A.C. took H.A.M. from the truck and carried him down the highway until encountered by police. Police then arrested M.A.C. H.A.M. has not seen his father since. H.A.M. was found dependent in June 2016 and lived continuously with his maternal grandmother ever since.

M.A.C. pleaded guilty to first degree murder and unlawful possession of controlled substances. He is serving a 357-month sentence with the Washington State Department of Corrections (DOC). His projected release date is March 22, 2045. By the time of M.A.C.'s projected release date H.A.M. will be 32 years old.

In April 2017, the juvenile court issued a default order terminating M.A.C.'s parental rights. M.A.C. filed a notice of appeal and the State agreed to vacate the order of termination. The matter then went to trial a second time in August 2018 with M.A.C. present and represented by counsel.

At trial, the court heard from several witnesses including M.A.C., the social worker, a forensic interviewer, and representatives from the DOC. The court-appointed guardian ad litem also made a statement to the court.

M.A.C.'s position at trial was that he had been deprived of rehabilitative services that might have afforded him a meaningful relationship with his son. He testified he was forced to enter a guilty plea and actually killed A.M.G. in self-defense. M.A.C. professed to be a good father and denied any substance abuse problems.

The State's witnesses undercut M.A.C.'s claims. According to the social worker, guardian ad litem, and forensic interviewer, H.A.M. was traumatized by M.A.C.'s actions and is not amenable to visitation. H.A.M. has formed a strong bond with his maternal

grandmother, a capable guardian with an expressed interest in adoption. The social worker testified she communicated with individuals at M.A.C.'s various places of incarceration. According to the testimony, remedial services may be available to M.A.C. in the state prison system. However, M.A.C. would not be able to take advantage of the services until closer to his release date.

The judge presiding over the 2018 termination trial was the same judicial officer who took M.A.C.'s guilty pleas and imposed sentence in his criminal case. At the beginning of the termination trial, M.A.C. moved for the judge's recusal based on his history with the case. The motion was denied.

At the end of trial, the juvenile court judge ordered termination of M.A.C.'s parental rights. In his oral findings, the judge made some strong comments regarding M.A.C.'s lack of credibility and the trauma inflicted on H.A.M. The judge asserted he would not order H.A.M. to visit M.A.C. unless ordered to do so. The judge deemed M.A.C. a liar, beneath contempt.

M.A.C. timely appealed the court's termination of his parental rights.

ANALYSIS

M.A.C. seeks reversal of the termination order on two bases: (1) the juvenile court judge violated the appearance of fairness doctrine by failing to recuse himself, and (2) the

3

State failed to prove continuation of the parent-child relationship diminished H.A.M.'s prospects for early integration into a stable and permanent home as required by RCW 13.34.180(1)(f). We find no error and affirm the termination order.

*Denial of recusal*

To establish improper denial of a recusal request in violation of the appearance of fairness doctrine, an appellant must point to "evidence of a judge's actual or potential bias." *State v. C.B.*, 195 Wn. App. 528, 545, 380 P.3d 626 (2016). M.A.C. has not met this burden. The juvenile judge's pretrial familiarity with M.A.C.'s criminal case is not evidence of bias; it is a typical feature of the dependency and termination process. The juvenile judge's decision to hold a joint dependency review/termination trial was a procedural decision agreed to by M.A.C.'s attorney. It is not indicative of impartiality. Finally, although during the oral announcement of findings the judge used strong language condemning M.A.C.'s conduct, this language is not evidence of improper bias. The appearance of fairness doctrine is concerned with pre-adjudication bias. *See State v. Solis-Diaz*, 187 Wn.2d 535, 541, 387 P.3d 703 (2017) (judge's comments required recusal on remand for resentencing). It is not implicated by a judge's candid discussion of the strength of the State's case at the time of disposition.

*Early integration into a permanent home—RCW 13.34.180(1)(f)*

To justify an order terminating parental rights, the State must prove six termination factors set forth at RCW 13.34.180(1)(a)-(f) by clear, cogent, and convincing evidence. *In re Welfare of A.B.*, 168 Wn.2d 908, 911, 232 P.3d 1104 (2010). The final of the six factors requires the State prove "continuation of the parent and child relationship clearly diminishes the child's prospects for early integration into a stable and permanent home." RCW 13.34.180(1)(f). When a parent is incarcerated, the permanency inquiry must take into account three specific elements: first, whether the parent maintains a meaningful role in the child's life; second, whether the State made reasonable efforts to address the incarcerated person's parental deficiencies; and third, whether particular barriers hindered the parent's access to services or meaningful contact with the child. *Id.*

Ample evidence supported the juvenile court's findings under RCW 13.34.180(1)(f). By the time of trial, M.A.C. had no positive, meaningful role to play in H.A.M.'s life. This was directly attributable to M.A.C.'s criminal conduct and the trauma inflicted on H.A.M. The nature of M.A.C.'s crime and length of his prison sentence eliminated almost any possibility of restoring a relationship between M.A.C. and H.A.M. Nevertheless, the State made adequate inquiries into the possibility of in-custody services. M.A.C.'s testimony revealed that, regardless of services, he lacked the capacity to play a

healthy role in H.A.M.'s life. M.A.C. denied any parental deficiencies and disclaimed responsibility for murdering H.A.M.'s mother. Fortunately for H.A.M., the State found an appropriate placement with H.A.M.'s maternal grandmother and H.A.M. faces the likelihood of adoption. Given these circumstances, the juvenile court was fully justified in making its findings under RCW 13.34.180(1)(f) and ordering termination of M.A.C.'s parental rights.

## CONCLUSION

The order terminating M.A.C.'s parental rights to H.A.M. is affirmed.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Pennell, A.C.J.

WE CONCUR:

_____
Siddoway, J.

_____
Fearing, J.

6